```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

HUGO A. RODRIGUEZ-RAMOS, HUGO A.
RODRIGUEZ, an infant under the age of
fourteen (14) by his father and natural
guardian, HUGO A. RODRIGUEZ-RAMOS,
KAREN TAGARIFE, an infant under the age
of fourteen (14) by her father and              CV-99 4799 (CPS)
natural guardian, HUGO A. RODRIGUEZ-RAMOS,
MARIA GUILLERMO, YOHEVIAN POLANCO,              MEMORANDUM OPINION
an infant under the age of fourteen(14)         AND ORDER
by her mother and natural guardian
MARIA GUILLERMO, and BELIKIS GUILLERMO


                                   Plaintiffs,

    - against -

The City of New York, Police Officer
and Detective Tracy Eustay,
Police Officer and Detective Joseph Bisogna,
and Other Unknown New York City Police
Officers, Individually and as Police
Officers for the New York City Police
Department, and James Nall

                                   Defendants.

-----------------------------------X

SIFTON, Senior Judge.
```

Plaintiffs Hugo A. Rodriguez-Ramos, Hugo A. Rodriguez, an infant under the age of 14 by his father and natural guardian, Hugo A. Rodriguez-Ramoz, Karen Tagarife, an infant under the age of 14 by her father and natural guardian, Hugo A. Rodriguez-Ramos, Maria Guillermo, Yohevian Polanco, an infant under the age

of 14 by her mother and natural guardian Maria Guillermo, and Belkis Guillermo (collectively "Plaintiffs"), brought action against Defendants City of New York ("City"), New York City police officers Tracy Eustay and Joseph Bisogna ("Police Officers"), and James Nall on August 17, 1999, alleging violations of their constitutional rights pursuant to 42 U.S.C. § 1983.

On May 25, 2004, in open court before Magistrate Judge Simon A. Chrein, all parties and parties' attorneys arrived at an agreement to settle the matter, which was placed on the record.[1] On February 11, 2005, this Court issued a Memorandum and Order granting defendant's motion to enforce the settlement agreement reached on May 25, 2004 before Magistrate Chrein.

Currently before the Court are the following matters: (1) plaintiffs have submitted an "Application for an Order Allowing for Compromise of the Minor Litigation" (hereinafter "Infant Compromise Order") for the Court's approval, and (2) plaintiffs' attorney Alan Sirlin has submitted copies of the retainer agreement for the Court's approval.

For the reasons stated below, the applications are denied without prejudice to their approval on resubmission.

---

[1] Although the settlement agreement had been placed on the record, the Clerk's office has been unable to locate the electronic recording of the May 25, 2004 proceeding. After plaintiffs refused to sign the settlement papers, defendant City of New York filed a motion to enforce the settlement agreement.

## BACKGROUND

The following facts are taken from relevant court records and the parties' submissions in connection with the present motion. The facts are undisputed unless otherwise noted.

Plaintiffs commenced this action on August 17, 1999, alleging violations of their civil rights pursuant to 42 U.S.C. § 1983. Plaintiffs alleged that on August 18, 1998, Police Officers Eustay and Bisogna, acting in concert with plaintiffs' landlord, James Nall, entered plaintiffs' apartment and injured several of them physically and emotionally, and threatened additional violence if plaintiffs did not vacate the premises. The three infant plaintiffs, Hugo Rodriguez-Ramos Jr., Karen Tagarife, and Yohavian Polanco, were not physically harmed, but witnessed the incident. Plaintiffs sought compensatory and punitive damages, reasonable attorneys' fees and costs.

On May 25, 2004, the parties reached an oral settlement agreement before Magistrate Judge Chrein. Defendants agreed to pay plaintiffs a total amount of $60,000 in full satisfaction of all claims. The Court issued an "Order of Discontinuance" on May 26, 2004. Defendant City subsequently forwarded to plaintiffs' counsel a Stipulation and Order of Settlement and Dismissal, along with Affidavits of No Liens and General Releases for each plaintiff. One or more of the plaintiffs subsequently refused to sign the Stipulation. Defendant City filed a motion to enforce

the settlement agreement, and for reasons discussed in the Memorandum and Order of this Court dated February 11, 2005, I granted the motion to enforce the settlement agreement, subject to this Court's endorsement of the Infant Compromise Order.

During oral argument on the motion to enforce the settlement agreement, which was held on January 12, 2005, the Court instructed plaintiffs' attorney, Alan Sirlin, to inform his clients that they could submit to the Court in writing any concerns regarding the amounts being awarded to the infants or counsel's fee. Sirlin has provided copies of the letters which he sent to his clients informing them of the Court's instructions. To date, the Court has received no submissions from the plaintiffs.

## DISCUSSION

### Infant Compromise Order

Local Rule 83.2 of the Eastern District of New York requires the Court to approve a settlement on behalf of an infant or incompetent. *See* E.D.N.Y. Local Civ. R. 83.2. In doing so, the Court must conclude that the infant compromise settlement is "fair, reasonable, and adequate." *Neilson v. Colgate-Palmolive Co.,* 199 F.3d 642, 654 (2d Cir. 1999)(quoting *Maywalt v. Parker & Parsely Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir.1995); *see also Anderson v. Sam Airlines,* 1997 WL 1179955, at *8 (E.D.N.Y.). Local Rule 83.2 requires courts to conform to New York State law

"as nearly as may be" in regards to Infant Compromise Settlements; however, "the court, for good cause shown, may dispense with any New York State requirement." *See* E.D.N.Y. Local Civ. R. 83.2; *see also Neilson*, 199 F.3d at 655.

The procedure and substantive standards governing approval of infant settlements in New York are set forth in New York Civil Practice Law and Rules (N.Y. CPLR) §§ 1206-1208. An infant's parent or guardian may make a motion to the court for approval of a proposed infant settlement. *See* N.Y. CPLR § 1207. The motion should include the following supporting documentation: (1) an affidavit of the infant's representative (i.e. parent or guardian), which provides certain specified information;[2] and (2) an affidavit of the attorney representing the infant.[3] *See* N.Y. CPLR § 1208.

---

[2] An affidavit of the infant's representative must state (1) the representative's name, residence, and relationship to the infant; (2) the name, age, and residence of the infant; (3) the circumstances giving rise to the action or claim; (4) the nature and extent of the damages sustained by the infant, the name of each physician who treated the infant, the medical expenses, the period of disability, the amount of lost wages, and the present physical condition of the infant; (5) the terms and proposed distribution of the settlement and the representative's approval of both; (6) the facts surrounding any motion or petition for settlement of the same claim; (7) whether reimbursement for medical or other expenses has been received from any source; and (8) whether the infant's representative or any member of the infant's family has made a claim for damages suffered as a result of the same occurrence giving rise to the infant's claim and, if so, the amount for which the claim is to be settled or the reasons the claim has not been settled. *Id.* § 1208(a).

[3] The infant's attorney must submit an affidavit stating (1) his reasons for recommending the settlement, (2) that he has not become concerned in the settlement at the instance of an adverse party or received compensation from any such party, and whether he has represented any other person asserting a claim arising from the same occurrence; and (3) the services rendered by him. *Id.* § 1208(b).

In this case, plaintiffs' proposed Infant Compromise Order states that under the terms of the settlement, minor plaintiff Hugo Rodriguez-Ramos Jr. will receive $3,333.34 and minor plaintiffs Karen Tagarife, and Yohevian Polanco will each receive $3,333.33. Plaintiffs have agreed that the infant settlement money will be invested in separate certificate of deposit accounts for each infant until the infant reaches the age of 18 (*See* Affirmation of Alan Sirlin ¶ 14); however, this information is not set forth in the proposed Infant Compromise Order.[4] Plaintiffs' motion papers include an affidavit of the attorney representative, Alan Sirlin, which substantially complies with N.Y. CPLR § 1208(b).[5] However, no affidavits of the parents or guardians of the infants have been provided to the court, as required by N.Y. CPRL § 1208(a). This is a substantial deviation from New York requirements, for which no cause has been shown. *See Tsotesi v. Board of Education of the City of New York,* 2003 WL 22006936, at *1 (S.D.N.Y. 2003).

Accordingly, the application for approval of the Infant Compromise Order is denied without prejudice to its renewal upon

---

[4] New York law grants a court discretion as to whether settlement funds are disbursed to an infant's guardian or put into an insured bank, trust fund, or other type of insured investment vehicle where, until the infant's eighteenth birthday, the funds are subject to withdrawal only upon court order. C.P.L.R. § 1206(c).

[5] However, I should note that certain paragraphs in the affidavit include blank spaces, which the attorney appears to have intended to fill in, but for some reason, did not.

papers complying with N.Y. CPLR §§ 1206-08.

## Attorney's Fees

"Courts have broad authority to refuse to enforce contingent fee agreements that exceed a reasonable amount." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999). Appellate review is appropriately deferential to a district court's determination of the reasonableness of a fee, and a reversal will occur only for an abuse of discretion. *Id.* The reasonableness of contingent fee contract must be evaluated at the time of formation. *Id.* at 103. New York State law governs the retainer in this case. *Alderman*, 169 F.3d at 103. New York statutory law places no explicit limit on a contingent retainer agreement, but does follow federal law in requiring that any retainer agreement be reasonable in proportion to the professional services provided. N.Y. Jud. Law § 474; *see Gair v. Peck*, 6 N.Y.2d 97, 114-15 (1959).

Plaintiffs' counsel have provided copies of the retainer agreements, signed by the three adult plaintiffs, Hugo A. Rodriguez-Ramos, Maria Guillermo, and Belkis Guillermo. Plaintiffs' counsel have also submitted an unlabeled, unsigned document, which itemizes expenses totaling $4152.15 and describes the attorneys fees to be paid to plaintiffs' attorneys Alan

Sirlin and Frederic Nicholson ("Tabulation Sheet").[6]  These documents, read together, raise several concerns.

First, Alan Sirlin states in his affirmation that no attorney fees or expenses will be deducted from the infants' settlements. (Affirmation of Alan Sirlin ¶ 13).[7]  However, the Tabulation Sheet calculates attorneys' fees in the following manner:

>  $60,000.00 (total settlement amount)
>  - 4,152.15 (expenses)
>  _____
>  $55.847.85
>
>  1/3- Attorneys $18,615.95
>
>  Sirlin- $9,307.97
>  Nicholson $9,307.97

Thus, the attorneys do, in fact, deduct fees from the infants' recovery, because they take one third out of plaintiffs' total recovery, without deducting the infants' amounts first.[8]

Second, the retainer agreements are ambiguous as to what exactly the contingent fee is. *See* Retainer Agreement, at 1. The retainer agreements state that the attorney "Frederic A. Nicholson" is entitled to thirty-three and one-third percent of

---

[6] Also, although Alan Sirlin affirms that he is the lawyer for the plaintiffs, his name appears nowhere on the retainer agreements.  The retainer agreement only names "Frederic A. Nicholson, Attorney at Law, 26 Court Street, Suite 2011, Brooklyn, NY 11242."

[7] However, I should note, this is not explicitly stated in the Proposed Infant Compromise Order that has been provided to the Court.

[8] Deducting the proposed infants' amounts from the total recovery first, 33 1/3% of the remaining amount is $15,267--not $18,615.95.

any recovery (after deducting expenses), "or at the election of the attorney...(A) fifty percent of the first one thousand dollars of the sum recovered,(B) forty percent of the next two thousand dollars of the sum recovered, (C) thirty-five percent of the next twenty-two thousand dollars of the sum recovered..." *See* Retainer Agreement, at 1. Given that clauses (A)-(D) have been crossed off on two of the retainer agreements,[9] and because the "Tabulation Sheet" states "1/3 Attorneys," I presume that clauses (A)-(D) were intended to be crossed off on all of the retainer agreements and that the contingent fee is no more than 33 1/3%.[10]

Accordingly, the application for attorneys' fees is denied without prejudice to a renewed application for approval of attorney's fees and expenses not to exceed counsel's actual expenses and up to 33 1/3% of the recovery exclusive of the amounts paid to the infant plaintiffs.

**CONCLUSION**

For the aforementioned reasons, the applications are denied without prejudice to their approval on resubmission.

---

[9] Clauses (a)-(d) are crossed out on two of the retainer agreements, but is left intact on the third retainer agreement signed by plaintiff Hugo Rodriguez.

[10] Assuming the retainer agreement is for thirty-three and one-third percent of the recovery exclusive of the amounts paid to the infants, the attorney fees will likely be approved as reasonable. Thirty-three and one-third percent is a fairly standard fee for a contingency retainer contract. *See Gair*, 6 N.Y.2d at 103, 114 ("Contingent fees are generally allowed in the United States because of their practical value in enabling a poor man with a meritorious cause of action to obtain competent counsel" and contingent fees of no more than 33 1/3% of the recovery are generally not unreasonable.)

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
          April 18, 2005

<u>Signed by Charles P. Sifton</u>
United States District Judge